**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN,** Appellant,

v.

**BANGOR AND AROOSTOOK RAILROAD COMPANY et al., Appellees.**

**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN,** Appellant,

v.

**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Appellees.**

**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN,** Appellant,

v.

**The NEW YORK CENTRAL RAILROAD COMPANY, Appellee.**

Nos. 20472, 20473, 20647.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 17, 1968.

Decided Feb. 28, 1969.

Certiorari Denied Oct. 13, 1969.

See 90 S.Ct. 70.

See also D.C.Cir., 420 F.2d 72, 77.

Mr. Joseph L. Rauh, Jr., Washington, D. C., with whom Messrs. John Silard, Issac N. Groner, Washington, D. C., Alex Elson, Chicago, Ill., and Mrs. Harriett R. Taylor, Washington, D. C., were on the brief, for appellant.

Mr. Francis M. Shea, Washington, D. C., with whom Mr. Richard T. Conway, Washington, D. C., was on the brief, for appellees.

Before DANAHER,* BURGER and LEVENTHAL, Circuit Judges.

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

PER CURIAM:

This case involves another aspect of the railroad work rules litigation. It concerns a supplemental issue that arose in the District Court in ancillary proceedings after issuance of the judgment that was reviewed by this court in Brotherhood of Railroad Trainmen v. Akron & Barberton Belt R.R. Co., 128 U.S.App. D.C. 59, 385 F.2d 581 (1967), cert. denied, 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed. 2d 983 (1968).

The rulings now before us were made by the District Court in rejecting overtime applications by the Brotherhood of Locomotive Firemen & Enginemen (BL FE) for injunctive relief. The underlying fact situation is the case where a carrier has, during the life of Award 282, listed runs and crews for purpose of abolition of firemen jobs, and such listing has not been vetoed by the Union under the Award, yet the carrier has in fact continued in service on such runs firemen helpers who come within paragraphs C(6) and C(7) of the Award.[1]

■ The District Court held that in general the carrier has the authority to take action subsequent to expiration of the award to remove the firemen from the listed run. The District Court studied and relied on the Award and on interpretative rulings of Arbitration Board 282.[2] We think this ruling is correct under the *Akron* decision.[3] We do not say there are no limits on the authority of the carrier.[4] But the mere fact that a carrier terminates the use of a C(6) or C(7) fireman is consistent with the work rule under the Award and Act where the work rule defines the position as one that requires no firemen, and hence is blankable.

■ Counsel for BLFE say that the Award intends protection for C(6) and C(7) firemen. But it would be inconsistent with the structure of the award to say that they have a right to stay on the blankable job and the carrier has to hire a new man to put in a vacancy in a must-fill position. Even where the vacancy being filled is in another blankable position, there are Board precedents for the carrier.

■ The only clear protection given by the Award to a C(6) and C(7) fire-

---

1. Sections C(6) and C(7) are concerned with the impact of job reduction on firemen employees of the railroad. Section C(6) applies to those helpers with less than 10 years' seniority, and provides that they shall be assured of "comparable" employment with the carrier, as for example, clerk, brakeman, fireman, etc. Section C(7), dealing with firemen with more than 10 years' seniority, confers greater protection, by assuring them that they will have the opportunity to work engine jobs, "unless and until retired, discharged for cause, or otherwise removed * * * by natural attrition." These sections protect the right to employment and guarantee certain kind of employment, but do not protect specific jobs.

2. Answers to Questions 3 and 43 (of BLFE); Questions (b), (c) and (f) of Southern Pacific.

3. *See* 128 U.S.App.D.C. at 89, 385 F.2d at 611:

> Conversely, however, if the work rule in effect on the last day of the Award provided that a fireman was not required for a particular engine crew—because that crew was included on the carrier's list of proposed blankable jobs and the union's local chairman did not designate it for retention of a fireman, within the ten percent of crews he could control—the work rule does not require a fireman on that crew even though for one reason or another the carrier had not removed or transferred that fireman by the end of the effective period of the Award. The carrier may thereafter transfer him, or refuse to replace him when he dies or retires. Such action would not constitute a change in work rules but simply an action in accordance with the work rule in force on the critical date, a rule which provided that no fireman was required for that crew.

4. Some kind of good faith limitation is indicated by the Board's Answer to BLFE. Question 75—a limitation there on the carrier's authority to change designation of blanked assignments. We are not required to consider whether there may be other good faith limitations. The District Court noted that a fireman could not be required to serve as a hostler in work beyond his physical powers.

man is the right to be employed even if the railway has to keep a fireman in a blankable position. He also has seniority rights, and the right to limit the transfers resulting from a blanking action to the same seniority district. While there may be limits on a carrier's authority emanating from an implied good faith standard, the case before us arises on a broadside claim of lack of carrier authority and that claim is not sustained.

Affirmed.